## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

CAMILLE LAFFOON,           )
                           )
        Plaintiff,   )
                           )
    vs.                    )     CASE NO. 2:09-cv-103
                           )
CITY OF PORTAGE, *et al.*, )
                           )
        Defendants.  )

### OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment, filed by Defendants, City of Portage, Roger A. Peele, Jr. ("Peele"), Louis Stanko ("Stanko"), Robert J. Shrader ("Shrader"), Philip Garzella ("Garzella"), Nick Grynovich ("Grynovich"), and Mark Monks ("Monks"), on January 28, 2011 (DE #12). For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to the claims for failure to intervene against Officers Grynovich and Stanko, for failure to train/supervise against the City of Portage, for the alleged 14th Amendment violations, for negligence against the City of Portage, and for the state law battery claim against Officer Peele, and the Clerk is **ORDERED** to **DISMISS THESE CLAIMS WITH PREJUDICE**. The motion is **DENIED** as to the claims for excessive force against Officer Peele, for failure to intervene against Officers Shrader,

Garzella, and Monks, and for the state law claim of battery against the City of Portage, and these claims **REMAIN PENDING.**

BACKGROUND

Procedural Background

This controversy stems from an altercation that occurred on April 14, 2007, inside a Denny's in Portage, Indiana, spilling out into the parking lot. Plaintiff, Camille Laffoon, was involved in the incident. Her claims revolve around her belief that the police used excessive force when arresting her.

Specifically, the Complaint states 5 counts. Count I alleges a violation of 42 U.S.C. § 1983 against Officer Roger A. Peele., Jr., for use of excessive force when he escorted Laffoon to a police car for transport to the Portage Police Station, and against the other five officers (Stanko, Shrader, Garzella, Grynovich, and Monks), for failure to intervene and prevent Peele's excessive force. Count II alleges violation of § 1983 by the City of Portage for failure to train and supervise its police officers. Count III asserts a 14th Amendment due process claim against the City of Portage and Officers Stanko, Shrader, Garzella, Grynovich, and Monks, for failure to protect Laffoon from foreseeable harm after she was arrested. Count IV states a state law claim of gross negligence on the part of Officers Stanko, Shrader, Garzella,

Grynovich and Monks for failing to protect Laffoon from the alleged excessive force inflicted by Peele, and against the City of Portage for failure to remove Peele as a police officer due to his alleged propensity to use excessive force. Count V alleges a state law claim of battery against Peele and the City of Portage.

Defendants move for summary judgment on all of the claims in the complaint. Plaintiff filed a response and brief in opposition to the motion, but because the pleadings were not signed, the Court struck the response and opposition brief (DE ##17 and 18, including striking the attached exhibits), with leave to properly refile signed pleadings by March 28, 2011 (DE #26). Plaintiff then filed a signed response and brief in opposition on March 28, 2011 (DE ##27, 28), but the brief contained new legal arguments and also included new evidence, including Plaintiff's Exhibit Numbers 4, 6, and 8. Defendants filed a motion to strike on April 8, 2011 (DE #33). This Court granted the motion in an order dated April 12, 2011, reasoning that because Plaintiff never asked the Court for leave to file a revised brief or to file additional evidence, it was improper for Plaintiff to take advantage of her original failure to follow the rules of procedure (by not signing the pleadings) to slip in additional evidence and bolster her response (DE #36). Thus, the Court struck the revised brief in opposition (DE #28) and Exhibits 4, 6, and 8 filed on March 28, 2011 (DE ## 29-32). Since entering the order granting the motion to strike,

neither party has filed any type of motion with this Court. Therefore, Defendants' Motion for Summary Judgment is left to be ruled upon, despite the fact that Plaintiff has no brief in opposition or evidence on the docket.

Local Rule 7.1(a) provides that, in the case of summary judgment, a party's "[f]ailure to file a response or reply within the time prescribed may subject the motion to summary ruling." Plaintiff's counsel failed to properly file her brief in opposition in accordance with the rules of the Court. To this date, she has provided no reason for submitting a new brief and additional evidence when the Court only granted her an opportunity to sign her original submissions. Moreover, Plaintiff has not requested that this Court allow her to sign the original filings and have those reinstated. Thus, a summary ruling is appropriate. However, "[s]trict enforcement of [local rules and deadlines] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted" and this Court must still "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.*

Undisputed Factual Background

4

Plaintiff Laffoon, Roderick Bell, and Derrick Howard went to the Denny's restaurant about 3:30 in the morning. Plaintiff drove Bell (who she refers to as her brother)to Denny's because he had been drinking earlier. They had all been at the Diamond Club, a nightclub in Gary, prior to going to Denny's. Bell's friend, Howard, drove Bell's car to Denny's, and Laffoon followed. They sat down at Denny's and ordered some food. Another group of people arrived and sat nearby Laffoon, Bell, and Howard. This other group consisted of 7 people: Angelia Hillard, Jason King, Clarence Pointer, Jr., Clarice Pointer, David Stewart, Alexis Whitley, and Kevin Williams. A woman in the second group believed Howard was winking at her, and a verbal confrontation erupted between the two groups. Laffoon's group rose to pay and leave the restaurant, and the 7 individuals from the second group followed. The verbal argument escalated near the front counter of Denny's. Howard moved his shirt up and displayed a handgun in his pants pocket.

Laffoon left the restaurant, and got her gun from her car. As Laffoon was walking back to Denny's, she fired 2 rounds into the air to warn the people in the other group. Laffoon then reentered Denny's, while waving her handgun back and forth in the air, saying, "I gotta gun, don't ****ing talk any shit" and "All you mother **ckers better go back to your tables and sit down and eat your food." (Defs.' Ex. A-4, Stanko's Supp. Report; Ex. A-6, Shrader's Supp. Report; Ex. A-23, Young Stmt.)

Laffoon, Bell, and Howard then left Denny's, and the individuals in the second group followed. Howard discharged his weapon into the pavement of the advancing group, and a bullet ricocheted and struck Bell in the groin. Hillard ran for cover, and felt the spray of debris striking her from Howard's gunfire. Bell punched Williams in the parking lot. At some point, Howard finished shooting and put his gun inside Laffoon's vehicle, a Ford Explorer. Laffoon hid her gun under Bell's vehicle, by the tire.

The Portage Police Department received the call of a disturbance in the Denny's parking lot at 4:20 a.m. Several officers were dispatched, and Stanko was the first to arrive at the scene. After other officers arrived, they secured the scene, and had multiple people lay on the ground, including Laffoon, who was handcuffed. Sargent Shrader eventually told Peele to take Laffoon to a squad car. (Defs.' Ex. B, Peele Aff. ¶ 8.) Peele has the following account of the events:

> After getting Lafoon [sic] to her feet, I began walking her to Officer Coleman's vehicle. Lafoon [sic.] was in front of me and I was behind her with my left hand holding the handcuff chain. From the time I began escorting Lafoon [sic.] to Officer Coleman's vehicle, Lafoon repeatedly attempted to pull away from me, and which caused 2 of my fingers on my left hand to be pinched in the handcuff chain. Lafoon [sic.] also attempted to turn towards me and make a noise as if she was getting ready to spit at me. In order to avoid being spit on, I pushed her face away. I repeatedly admonished her to stop her aggressive and uncooperative actions. . . While I was attempting

to open the rear passenger door of Officer
Coleman's vehicle, Lafoon [sic.] continued in her
efforts to pull away from me which caused the
handcuff chain to tighten around and pinch the
fingers of my left hand. In order to stop Lafoon's
[sic.] aggressive actions and to avoid injury to
myself, I took Lafoon [sic.] to the ground. Once I
had Lafoon [sic.] on the ground she continued to
resist my efforts to stop her aggressive actions.
I then began applying pressure with my right thumb
to the pressure point on the side of her neck until
her aggressive actions stopped.

(Defs.' Ex. B, Peele Aff., ¶¶ 8-12.) Peele denies slamming

Laffoon's head against the squad car, throwing her to the ground,

jumping on her back, pounding her face in the pavement, or pulling

her hair. (*Id.* at ¶¶ 16-17.)

In sharp contrast, in her initial statement to the police,

made later that morning of the arrest, Laffoon stated that once the

officer got her to the car, the officer grabbed her by the hair and

threw her to the ground, choked her, and pushed her head into the

pavement.[1]   (Defs.' Ex. A-17, Tr. Of Recorded Stmt. of Camille

Laffoon.)  Specifically, Laffoon said in her police statement that:

> I'm jest goin' along with him. . . [O]nce he got me
> on the car and he spread my legs or whatever and
> um, told me get against the car.  Then he . . .
> just grabbed me by my hair and throwin' me to the
> ground.  Ah, I hit the ground ah, at first and when
> I hit the ah, ground at first [he] still was
> pushin' my head um, inta the ground.  He was
> chokin' me and I kept sayin', "I can't breath.  I
> can't breath" and he was sayin' . . . "Well ah, you
> still talkin' so you can breath" and I kept on
> sayin', "I can't breath.  I can't breath."  So then
> I didn't want him to keep on pushing my head so I
> just stood there I mean when I stood there, I layed
> there and was quiet.  So I'm just quiet then after
> a while after maybe a minute or two he stopped

---

[1]Defendants believe Laffoon's statement made at the police
station the morning of her arrest is inadmissible hearsay because
it is not verified or in the form of an affidavit.  While it is
true that only evidence which would be admissible at trial may be
considered in summary judgment proceedings, *see First Nat'l Bank
Co. v. Insurance Co. of North America*, 606 F.2d 760, 766 (7th
Cir. 1979), it is also true that "[a]t the summary judgment
stage, we do not focus on the admissibility of the evidence's
form.  We instead focus on the admissibility of its contents."
*Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  The
police station statement is a recitation of the events within
Laffoon's personal knowledge, and could be admitted into evidence
at trial in a variety of ways, including Laffoon could testify to
the relevant portions of her statement from her personal
knowledge, and if she forgot exact dates or details, her memory
could be refreshed with the statement.  *Id*. at 1037.  Because the
statement's contents could be presented in an admissible form at
trial, the Court has considered the contents in this summary
judgment motion.   The Court also notes that while the statement
at the police station may not technically have been signed under
the penalty of perjury, Laffoon did say that the facts in the
statement were true and accurate to the best of her knowledge,
and that she would be willing to testify to the facts contained
in the statement.  (Defs.' Ex. A-17, Tr. Of Recorded Stmt. Of
Camillle Laffoon.)  Thus, it does carry an indicia of
reliability.

> puttin' the pressure on me and was like, "Now you
> gonna act like an adult" and I was like I didn't
> say anything. I was jest quiet. So he got up and
> I heard him over his walkie talkie sayin' um, this
> woman just resisted arrest and she spit on me in my
> face, but how can I spit on him in his face when
> eh, I'm lookin' back ta my left and he's pullin' me
> from my right so pullin' me to the car. So that's
> impossible for me to even spit in his face. It's
> jest impossible.

*Id.* Additionally, Laffoon alleges that Officer Peele slammed her head multiple times against the police car, ripped out a plug of hair from her head, and when she was lying on the ground, that he jumped on her back and pounded her head, face, and eye into the concrete ground. (Compl. ¶¶ 18-21.) Laffoon claimed the officer injured her eye. After her interview at the police station, Laffoon was treated for the injury to her face/eye.[2] (Defs.' Ex. A-9, Supp. Report of Sgt. Grynovich.)

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the

---

[2]Officer Grynovich's Supplemental Report states that Portage Fire Department treated her for a cut over her right eye. (Defs.' Ex. A-9, p. 1.) It is unclear from the record whether she was treated in a hospital or not.

moving party is entitled to judgment as a matter of law. *See*
*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v.*
*Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record
must reveal that no reasonable jury could find for the nonmovant.
*Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th
Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,
250 (1986). In deciding a motion for summary judgment, a court
must view all facts in the light most favorable to the nonmovant.
*Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas de*
*Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of
"the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits," if any, that the
movant believes "demonstrate the absence of a genuine issue of
material fact." *Celotex*, 477 U.S. at 323. Once the movant has met
this burden, the nonmovant may not rest upon mere assertions
but"must set forth specific facts showing that there is a genuine
issue for trial. Fed. R. Civ. P. 56(c); *Becker v. Tenenbaum-Hill*
*Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v.*
*Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).
"Whether a fact is material depends on the substantive law
underlying a particular claim and 'only disputes over facts that
*might affect the outcome* of the suit under governing law will
properly preclude the entry of summary judgment.'" *Walter v.*

*Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

In sum, a Court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" because "summary judgment cannot be used to resolve swearing contests between litigants." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must

affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.


Excessive Force Claim Against Officer Peele

Count I of the complaint states a claim for excessive force in violation of § 1983 against Officer Peele. The Supreme Court has recognized that if events are recorded on a police officer's dashboard camera, the court is not necessarily obligated to take the non-moving party's version of the facts as true. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Paige v. City of Fort Wayne*, No. 1:09-cv-143, 2010 WL 3522526, at *4-9 (N.D. Ind. Sept. 2, 2010) (granting summary judgment where video recording largely contradicted plaintiff's version). However, in this case, there are no videos from dashboard cameras or anything else in the record at this stage of the proceedings that "blatantly contradict[s]" Laffoon's story. Therefore, the facts must be received in the light most favorable to Laffoon, the non-moving party. *Payne,* 337 F.3d at 770.

A claim of "excessive force in the course of an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 388 (1989). This analysis gives rise to the overall question of "whether [the officer's] actions were objectively reasonable." *Scott*, 550 U.S. at 381. Answering this inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. In determining whether an officer's actions were objectively reasonable under the circumstances, the Court should view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Thus, an officer's use of force is unconstitutional if, "judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne*, 337 F.3d at 668 (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)).

The Court notes that such a determination of whether force was reasonable "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [therefore] we have held on many occasions that summary judgment or judgment as

a matter of law in excessive force cases should be granted sparingly." *Drummond ex rel Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (citation omitted). In analyzing this case under the *Graham* factors, 490 U.S. at 396, a reasonable jury could find that Officer Peele used excessive force when escorting Laffoon to the transport car. Certainly, there is a genuine issue of fact as to whether Laffoon posed any threat to Officer Peele, whether she was resisting arrest, and whether Officer Peele used excessive force. It is true that the crime at issue was potentially serious – two individuals were shot in the parking lot. In analyzing whether the suspect poses an immediate threat to Officer Peele or others, the Court notes that she was handcuffed. According to Laffoon, she was just going to the car, and she did not spit in Peele's face. (Defs.' Ex. A-17, Tr. Of Recorded Stmt. Of Camille Laffoon.) Although Peele asserts that Laffoon was being aggressive, there is nothing in the record before the Court to suggest that she was trying to flee.

Once this Court takes Laffoon's account as true, as it must since it is not "blatantly contradicted by [a] [video recording]", *Scott*, 550 U.S. at 380, "it is difficult to conceive of a reasonable explanation for [the officer's] conduct, and a jury could readily conclude that [the officer] used excessive force." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 686 (7th Cir. 2007). It is well established that "a police officer may not

continue to use force against a suspect who is subdued and complying with the officer's orders." *Hayes v. City of Indianapolis*, No. 1:08-cv-6-DFH-JMS, 2009 WL 700232, at *4 (S.D. Ind. Mar. 16, 2009) (collecting cases). "Even 'one violent push and poke' will constitute excessive force when there is no provocation." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1007); *see also Norris v. Bain*, No. 1:04-CV-1545DFHTAB, 2006 WL 753131, at *14 (S.D. Ind. Mar. 21, 2006) ("[It is] well established that the use of force unnecessary for an arrest, particularly where force is applied to a suspect who is not fleeing or resisting, and who has been overcome, cannot be considered constitutionally reasonable."); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (shoving handcuffed and unarmed arrestee into police car, causing mild injury to knee, was excessive force). In this case, the jury could find that Officer Peele used excessive force if it accepts Laffoon's version of the story – that she was handcuffed, and she did not resist arrest, attempt to flee, or try to spit at Officer Peele, when he slammed her head into the police car, threw her to the ground, jumped on her back, and pounded her head, face, and eye into the concrete ground. (Compl. ¶¶ 18-21; (Defs.' Ex. A-17, Tr. Of Recorded Stmt. of Camille Laffoon.)

Moreover, Officer Peele is not entitled to qualified immunity. Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995) (citing *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotation omitted).

A 2-part test determines whether a government official such as Peele is entitled to qualified immunity in a civil suit under section 1983, and in this case, it makes sense to follow the *Saucier* procedure. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *see also Pearson v. Callahan*, 129 S.Ct. 808, 821-22 (2009). The threshold inquiry is whether, taken in the light most favorable to Plaintiff, "the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226 (1991)). If the facts as alleged reveal no constitutional violation, the inquiry ends and the officer will prevail on the merits of the case. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding if there is no constitutional violation, there can be no liability on the part of the individual officer or the government body).

If, on the other hand, the facts alleged would amount to a constitutional violation (as they do in this case), the Court next examines "whether the right was clearly established." *Saucier*, 533 U.S. at 201. The rationale behind this is "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted." *Payne*, 337 F.3d at 775-76 (citing *Saucier*, 533 U.S. at 202). A plaintiff can defeat a qualified immunity defense by showing that "the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Wheeler v. Lawson* , 539 F.3d 629, 639 (7th Cir. 2008) (quotation omitted).

At the time of Laffoon's arrest, "it was of course clearly established that a police officer may not use excessive force in arresting an individual." *Holmes*, 511 F.3d at 687; *see also Norris*, 2006 WL 753131, at *14 ("[T]he Seventh Circuit [has] made clear that police officers do not have the right to inflict 'wholly gratuitous' force on a subdued suspect who was not resisting arrest."). Taking Laffoon's account as true, that she was handcuffed and did not resist arrest, Officer Peele could not have

reasonably believed that the allegedly gratuitous force he employed against Laffoon was justified. *See Holmes*, 511 F.3d at 687. In other words, no reasonable officer could have believed it was permissible to grab a suspect's hair, hit her head against a squad car, throw her to the ground, push her face into the ground, and choke her, when the suspect was already in handcuffs and compliant. *Id.; see also Hayes*, 2009 WL 700232, at *4 ("It has long been well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders."); *Frazell v. Flanigan*, 102 F.3d 877, 884 (7th Cir. 1996) (jury could reasonably conclude that officer who struck subdued suspect in back with nightstick used objectively unreasonable force and was not entitled to qualified immunity).

On the record before this Court, Officer Peele is not entitled to qualified immunity. *See White v. Gerardot*, No. 1:05-CV-382, 2007 WL 541819, at *7 (N.D. Ind. Feb. 15, 2007) (quotation omitted) ("[W]hen factual disputes surrounding the conduct at issue bear directly upon whether it was objectively reasonable for [the officer] to believe he acted in compliance with clearly established law, then summary judgment on the issue of qualified immunity must be denied."). Therefore, Officer Peele's motion for summary judgment on the basis that the force he used was reasonable under the circumstances is **DENIED**.

<u>Claim Against City of Portage For Failure to Train and Supervise</u>

In Count II, Laffoon states a claim against the City of Portage under § 1983 for failure to train, supervise, and discipline. To impose liability under section 1983 on the City of Portage, Laffoon must prove that the Constitutional deprivation was caused by an official municipal policy or custom. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986). To establish a municipal policy or custom, she must allege a specific pattern or series of incidents that support the general allegation of a custom or policy. In other words, "[t]he inadequacy of police training may serve as the basis for § 1983 liability, but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Laffoon "must set forth some evidence that [the City of Portage's] failure to train its officers amounted to deliberate indifference to the rights of individuals with whom the officers came into contact." *Id.* "Proof of failure to train officers could be used to demonstrate that the municipality approves (hence has a policy of) improper conduct that training could extirpate. Such a claim in a case like this would depend on establishing that the City's policymakers knew that the police were using objectively

19

unreasonable force in apprehending suspects, yet did nothing to solve the problem." *Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001) (citing *Canton*, 489 U.S. at 388 n. 8; *Lanigan v. East Hazel Crest*, 110 F.3d 467, 478-79 (7th Cir. 1997); *Sledd v. Lindsay*, 102 F.3d 282 (7th Cir. 1996)).

Laffoon has not identified any policy, practice or custom that deprived her of her constitutional rights, or submitted any evidence that the City of Portage made a deliberate or conscious choice in failing to train its officers in the proper use of force during an arrest. Moreover, there is no evidence before the Court that use of excessive force is common in Portage. Peele attests that he attended and graduated from the Indiana Law Enforcement Academy in December, 1999, and has since met or exceeded the in-service training requirements of the Portage Police Department and the State of Indiana. (Peele Aff., DE #14-3, ¶ 3.) Summary judgment is warranted for the City of Portage on the failure to train claim.

### Alleged 14th Amendment Violation

Count III states a claim for violation under the 14th Amendment against the City of Portage, Stanko, Shrader, Garzella, Grynovich, and Monk, "who failed to protect the Plaintiff from the foreseeable harm once they arrested her and took her into custody." (Compl., ¶ 34.) However, as the Defendants note in their motion for summary

judgment, Count III seems to just restate Laffoon's claim for failure to intervene against the officers. The 14th Amendment does not create additional rights or claims against police officers for use of excessive force, or failure to intervene under § 1983. Therefore, summary judgment is appropriate on this claim.

## Negligence Claim

Count IV of the complaint states a claim for gross negligence under Indiana law against Stanko, Shrader, Garzella, Grynovich, and Monks, for failure to protect Laffoon from excessive force inflicted by Officer Peele, and against the City of Portage for not removing Officer Peele from patrolling the streets of Portage. (Compl. ¶¶ 36-37.) Defendants have presented uncontroverted evidence that Officer Grynovich had not yet reached the scene at the time of the alleged excessive force by Peele (Defs.' Ex. D, Grynovich Aff., ¶¶ 5-7), and that Officer Stanko was in a different location at the scene and did not observe the alleged excessive force (Defs.' Ex. C, Stanko Aff., ¶¶ 4-5). Thus, the Court restricts its analysis to Officers Shrader, Garzella, and Monks, and the City of Portage.

In support of this claim, Plaintiff alleges that Officer Shrader, Garzella, and Monks "were present and watched Defendant Roger A. Peele Jr., throw Plaintiff to the ground and pound her head into the ground and did nothing to intervene to protect

21

Plaintiff from Defendant Roger A. Peele Jr., or stop said conduct."
(Compl. ¶ 23.)   In their memorandum in support of motion for
summary judgment, and reply memorandum, Defendants merely argue
that Officers Grynovich and Stanko are entitled to summary judgment
on the claim of failure to intervene - Defendants provide no
argument whatsoever about whether summary judgment is appropriate
for Officers Shrader, Garzella, and Monks, if there is a triable
issue about excessive force.   (DE #13, p. 15; DE #25, p. 7.)
Defendants presented affidavits of Officer Stanko and Grynovich
stating Officer Stanko did not observe Peele taking Laffoon to the
squad car and did not observe the alleged use of force (DE #14-4,
¶¶ 4-5), and that Officer Grynovich arrived at the scene after the
alleged use of excessive force occurred (DE #14-5, ¶ 5-7).
However, Defendants failed to submit any evidence to the Court
regarding whether Officers Shrader, Garzella or Monks, were in the
vicinity of Officer Peele when he escorted Laffoon to his squad
car, or whether they witnessed the alleged use of excessive force.

The Seventh Circuit has held that:

> An officer who is present and fails to intervene to
> prevent other law enforcement officers from
> infringing the constitutional rights of citizens is
> liable under § 1983 if that officer had reason to
> know: (1) that excessive force was being used, (2)
> that a citizen has been unjustifiably arrested, or
> (3) that any constitutional violation has been
> committed by a law enforcement official; *and* the
> officer had a realistic opportunity to intervene to
> prevent the harm from occurring.

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original) (citations omitted). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possible conclude otherwise." *Lanigan v. Village of East Hazel Crest*, *Ill.*, 110 F.3d 467, 477 (7th Cir. 1997).

Here, the Court has already found that a triable question of fact exists as to Officer Peele's behavior regarding the excessive force claim. Factors to be considered in a totality of the circumstances inquiry include the length of the excessive force, the number of blows involved, and the positions of the bystander officers relative to the altercation. *Kirkwood v. DeLong*, 683 F.Supp.2d 823, 830 (N.D. Ind. 2010). In *Kirkwood*, in which the use of force involved "three separate blows – a tackle, an arm bar, and a knee to the back [and] [t]he officers were standing ten feet away or less [and] the altercation . . . may have lasted for twenty seconds," the Court found that a jury could reasonably find that the bystander officer had reason to know that excessive force was being used, and could have stopped the force. *Id*. Therefore, the Court denied summary judgment. Similarly, in *Davis v. Fenimore*, No. 09 CV 939, 2010 WL 1489988, at *3 (N.D. Ill. April 13, 2010), the Court denied summary judgment on a failure to intervene claim, finding "[t]he speed at which the disputed events actually

occurred, and the resulting reasonablenss of [the officers]
responses, are issues for a jury to decide." Because there is
scant evidence before the Court at this time as to the exact
positions of Officers Shrader, Garzella, and Monks, whether they
had reason to know that excessive force was being used, and how
long the episode took and whether the other officers had a
realistic opportunity to intervene, these are also issues for a
jury. Therefore, summary judgment should not be granted for
Officers Shrader, Garzella, and Monks, on the failure to intervene
claim.

To the extent this negligence claim is lodged against the City
of Portage, for failing to remove Officer Peele from the police
force, Laffoon simply has not put forth sufficient evidence to show
that the City of Portage had a custom or practice of using
excessive force, and condoned such behavior. *Gentry v. Duckworth*,
65 F.3d 555, 561 (7th Cir. 1995). Therefore, summary judgment is
appropriate for the City of Portage on the negligence claim.

### Battery Under Indiana Law

Finally, Laffoon sets forth a claim of battery under Indiana
law, against Officer Peele and the City of Portage. (Compl., Count
V.) Defendants baldly assert that the individual claim against
Officer Peele is barred by Ind. Code § 34-13-3-5(b), and any state

law claims are barred by Ind. Code § 34-13-3-3(7). (Defs.' Br., DE #13, p., 18.)

It is true that § 34-13-3-5(b) provides in pertinent part that "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Thus, because it is undisputed that Officer Peele was acting within the scope of his employment, the City of Portage is the sole defendant on the state law claim under respondeat superior. *See City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999) ("Under the doctrine of respondeat superior, an employer is liable for the acts of its employees which were committed within the course and scope of their employment.").

With regard to the claim for battery against the City of Portage, under the theory of *respondeat superior*, Defendants merely claim this is barred by § 34-13-3-3(7), which provides that a governmental entity shall not be liable for "[t]he performance of a discretionary function . . . ." Defendants may have intended to cite to the current section of the Tort Claims Act's "enforcement of a law" immunity, which is § 34-13-3-3(8). However, "[u]nder Indiana law, a police officer may use only the force that is reasonable and necessary for effecting an arrest." *Fidler v. City of Indianapolis*, 428 F.Supp.2d 857, 866 (S.D. Ind. 2006) (citing Ind. Code § 35-41-3-3(b)). Consequently, "[i]f a police officer

uses unnecessary or excessive force, the officer may commit the torts of assault and battery." *Id.* (citations omitted). Moreover, because excessive force claims fall outside the scope of law enforcement immunity under Indiana law, the statutory law enforcement immunity does not shield the City of Portage from Laffoon's battery claim. *See Wilson v. Isaacs*, 929 N.E.2d 200, 203-04 (Ind. 2010) (holding law enforcement immunity of the ITCA does not shield Government from liability for excessive force by police); *Lessley v. City of Madison, Ind.*, 654 F.Supp. 2d 877, 913 (S.D. Ind. 2009).

In sum, "[t]he same genuine issues of material fact that prevent this court from granting summary judgment on [Laffoon's] § 1983 claims therefore also preclude summary judgment on [her] state law claim. . . " against the City of Portage based on the actions of Officer Peele. *Fidler*, 428 F.Supp.2d at 866. Thus, the motion for summary judgment is denied with respect to Laffoon's state law battery claim against the City of Portage.

CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to the claims for failure to intervene against Officers

Grynovich and Stanko, for failure to train/supervise against the City of Portage, for the alleged 14th Amendment violations, for negligence against the City of Portage, and for the state law battery claim against Officer Peele, and the Clerk is **ORDERED** to **DISMISS THESE CLAIMS WITH PREJUDICE**.  The motion is **DENIED** as to the claims for excessive force against Officer Peele, for failure to intervene against Officers Shrader, Garzella, and Monks, and for the state law claim of battery against the City of Portage, and these claims **REMAIN PENDING**.



**DATED: June 8, 2011**          **/s/ RUDY LOZANO, Judge**

                                 **United States District Court**

27